LAW OFFICE OF PAUL DELANO WOLF
Paul Delano Wolf, SBN 78624
717 Washington Street, 2nd Floor
Oakland, California 94607
Telephone (510) 451-4600
Fax(510) 451-3002
paul@pdwolflaw.com

Attorney for Defendant
LEONARD B. AUERBACH

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) Case No. CR 08-0367-01 DLJ |
|---|---|
| Plaintiff, | ) **DEFENDANT'S SENTENCING MEMORANDUM** |
| v. | ) |
| LEONARD B. AUERBACH, | ) Date: November 14, 2008 |
| | ) Time: 10:00 a.m. |
| Defendant. | ) Courtroom: DLJ |

I.

INTRODUCTION

Pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(C) Plea Agreement, Leonard Auerbach entered a plea of guilty to a violation of Title 18 USC 2251(c), Production of Child Pornography. The terms and conditions of the Plea Agreement include that Mr. Auerbach will be sentenced to the mandatory minimum term of imprisonment of 180 months, serve a lifetime term of supervised release, forfeit $270,000 in money judgment, pay a $200,000 fine, contribute $100,000 to the National Center for Missing and Exploited Children, and pay restitution to the single victim in this case of $78,000.

DEFENDANT'S SENTENCING MEMO

The United States Probation Office has prepared a Presentence Report (PSR) and concluded, consistent with the agreement of the parties, that the advisory United States Sentencing Guideline (USSG) in this case is Total Offense Level 35, Criminal History Category I. Further, the PSR recommends a sentence consistent with the agreement of the parties. Mr. Auerbach has no objection to the PSR.

## II.

## BACKGROUND

Mr. Auerbach's offense behavior has been fully described in both the Plea Agreement (¶ 2) and the PSR (¶¶ 6-16), so that information will not be repeated here. There is salient information, however, which Mr. Auerbach wishes to bring to the Court's attention in support of the terms and conditions of the Plea Agreement.

Mr. Auerbach is now 62 years old. This offense is the first and only conviction he has sustained in his life, which has heretofore been characterized by considerable accomplishment and contribution to society. A graduate of the University of Wisconsin, Madison, with a Bachelor of Science Degree in Mathematics, and a PhD from the University of California, Berkeley, in Business Operations Research, Mr. Auerbach taught for ten years at the Haas Business School at UC Berkeley, and was one of the founding faculty members of the Executive MBA Program at St. Mary's College, where he taught for almost 15 years. In addition to numerous scholarly articles, he co-authored a widely used business graduate school textbook, <u>Thinking for Decisions</u>, Churchman, Auerbach, and Sadan, Scientific Associates, 1973, while also attending to his teaching responsibilities. His record in academia is unblemished.

Concurrently, Mr. Auerbach developed a career in business, acting as consultant to businesses, as well as serving on Boards of Directors and acting as a trustee for a number of mutual funds. He is internationally known for an expertise in risk management and was named the "Director of the Year" by an investment trade organization.

Before the present offense, Mr. Auerbach also led an exemplary personal life.  He and his wife Carol raised two sons, both of whom were scholar/athletes at Claremont McKenna College and both of whom have embarked on business careers after their college graduations.  Recognizing the role Claremont McKenna played in the development of his sons, Mr. and Mrs. Auerbach endowed a lecture series at the college's Institute for the Study of Genocide, the Holocaust and Human Rights. During the Auerbach sons' childhood, Mr. Auerbach was active in their community activities, coaching soccer, basketball, and baseball in community leagues in the Orinda area.

Before this offense Mr. Auerbach's life was not without struggle, however.  In 1996, he was diagnosed with Major Depressive Disorder, Recurrent Type, and was later determined to be suffering from Bipolar Disorder (PSR ¶45). He has taken psycho-tropic medication ever since and now is prescribed Effexor (venlafaxine hydrochloride), an antidepressant and anti-anxiety agent. He has periodically "self-medicated" with central nervous system stimulants, such as cocaine (PSR ¶46). It is quite likely that Mr. Auerbach's psychiatric condition and his efforts at self-medication eroded his inhibitions and contributed to the commission of the present offense.  He has expressed his desire to gain greater understanding of his condition and his behavior, including his

DEFENDANT'S SENTENCING MEMO        - 3 -

deficient impulse control, through treatment. He has expressed that he will participate in any treatment programs he is offered within the Bureau of Prisons.

As the instant offense came to light and Mr. Auerbach became a target of this investigation, he obtained present counsel and engaged in negotiations with the Government. A tentative agreement was reached, with far less onerous penalties than the present agreement. However, Mr. Auerbach panicked and fled to Cuba (PSR ¶¶ 15, 16, & 18).  He traveled under his own name and was easily apprehended by Cuban authorities on May 9, 2008, after a Complaint was filed and an arrest warrant issued. He remained in custody and was delivered to United States' authorities on June 13, 2008. It can reasonably be stated that Mr. Auerbach's "panic" and flight, albeit rather amateurish, has cost him as much as an additional seven years of future freedom. He has stated that he made himself easily apprehended, because he could not visit the stress and unfair treatment on his family related to his fugitive status and its attendant notoriety.

The Plea Agreement in this case calls for imprisonment for 15 years, lifetime supervised release, and substantial monetary penalties.  Now 62 years old, Mr. Auerbach will be required to serve 13 years and one month in prison. He will be 75 years old at release. Because of the nature of his offense, he will not be eligible for any of the early release programs offered by the Bureau of Prisons or for less secure housing, such as in a prison camp.[1]

---

[1] The BOP prohibits those convicted of sex offenses from benefitting from the early release provisions for participation in the Residential Drug Abuse Program. The recently passed "Second Chance Act" also excludes sex offenders from it early release provisions.

DEFENDANT'S SENTENCING MEMO            - 4 -

# III.

# APPLICABLE SENTENCING LAW

The landmark decision in United States v. Booker, 160 L. Ed. 2d 621, 125 S.Ct. 738 (2005), changed sentencing in the Federal Courts. Booker renders the Guidelines as advisory only, and instructs the sentencing courts to consider the Guidelines in context of all of those factors enumerated in Title 18 USC 3553(a). The Court found that the mandatory application of the Guidelines was unconstitutional. The Supreme Court has now articulated the process by which sentencing and appellate courts must implement the findings in Booker. The court has directed:

> "As we explained in Rita (Rita v. United States, 127 U.S. 2456, 168 L.Ed. 2d 203 (2007)), a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. . . . As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. . . . He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.
>
> . . . Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from

DEFENDANT'S SENTENCING MEMO         - 5 -

> the Guidelines range. If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness. . . . But if the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district court's decision that the §3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." Gall v. United States, 128 S.Ct. 586, 596-597, 169 L. Ed. 2d 445 (2007) (citations and footnotes omitted).

The Court must now consider 18 USC 3553(a) in its entirety and impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The court, in determining the particular sentence to be imposed, shall consider –

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed --

    (a) to reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense;

    (b) to afford adequate deterrence to criminal conduct;

    (c) to protect the public from further crimes of the defendant; and

    (d) to provide the defendant with needed education or vocational training, medical care or other correctional treatment in the most effective manner;

## IV.

### A REASONABLE SENTENCE

The PSR has accurately calculated the advisory Guidelines in this case, concluding the case is Total Offense Level 35, Criminal History Category I, with a sentencing range of 180-210 months. The statutory mandatory minimum in this case, pursuant to

Title 18 USC 2251(c), is 180 months.  The parties have agreed that a sentence of 180 months is reasonable, in addition to the monetary penalties outlined above, and the PSR concurs.

Separate and apart from the agreement of the parties and the recommendation of the PSR, a sentence of 180 months **is** more than adequate. There is no doubt that Mr. Auerbach created the offending images in this case, but it is also clear that he produced the images for his own use and not for distribution to others. The calculation of the Guidelines in this case accounts for all of Mr. Auerbach's offense conduct, including his history with the victim, resulting in an advisory range of 180-210 months.

The recommended sentence will result in Mr. Auerbach's incarceration for over 13 years, resulting in his release at age 75. He will then be subject to supervised release for the remainder of his life.  Certainly brought about by his own conduct, this is a tragic late chapter to the life of a man who has otherwise contributed substantially to society and his family.  It is a sentence "sufficient, but not greater than necessary" to accomplish the goals of sentencing.  Indeed, this sentence is much more than enough to achieve these goals.

## CONCLUSION

For the reasons articulated above, it is respectfully requested that the Court adopt the terms and conditions of the Plea Agreement and sentence Leonard Auerbach to 180 months imprisonment, order the forfeiture of $270,000, the payment of a $200,000 fine, a contribution of $100,000 to the National Center for Missing and Exploited Children, and restitution to the victim of $78,000.

DEFENDANT'S SENTENCING MEMO         -7-

It is also requested that the Court recommend to the Bureau of Prisons designation to the Federal Correctional Institution at Lompoc, California, as long as it is consistent with BOP security policy, to promote the maintenance of important family relationships. Finally, although Mr. Auerbach is aware of the Court's limitations with respect to awarding credit for time served, it is respectfully requested that the Court, simply as an advisory gesture, request that the Bureau of Prisons grant Mr. Auerbach credit for the six weeks he spent in Cuban custody, commencing May 9, 2008, until his transfer to U.S. authorities on June 13, 2008 (PSR Face Sheet).

DATED: November 6, 2008

                    Respectfully submitted,

                    By _____/S/_____
                       PAUL DELANO WOLF
                       Attorney for Defendant
                       LEONARD B. AUERBACH